The next case on the court's docket is Roberts, et al. v. Dr. Kinney, et al. Counsel? Mr. Brown, you're in an unusual position this time. Are you ready to proceed? Yes, Justice. Okay. May it please the Court, Counsel, Madam Clerk. My name is Nate Brown. The first time I argued in front of this Court, I forgot to introduce myself, and I'll not do that again. My name is Nate Brown, and I represent plaintiffs, the Roberts. I am of Keck, Brown. I want to begin by expressing my condolences to the Justices for the loss of Justice Welch. He was certainly an institution, and I know you've become colleagues, and I'm sorry for your loss. Thank you. He will be sorely missed. In preparing for today, I have begun to think about this not in so much a different way than as was briefed, but I noticed that neither defense nor the Court suggests that Mackey was decided wrongly. Instead, they distinguish Mackey. They say that the plaintiffs in this action had sufficient knowledge to trigger the statute of limitations as it pertains to a claim against Dr. Kennan. The defense also argues that the plaintiffs could have taken some action in order to obtain sufficient information as it relates to a potential claim against Dr. Kennan. We disagree with this. That's one of the things that we're asking the Court to do. We're saying that the trial court erred as a matter of law in finding that there were sufficient facts to trigger a claim against Dr. Kennan, granting summary judgment to the defense. Separately, we're arguing that the court erred in not separately considering the knowledge and the facts known to each of the plaintiffs separately. For those reasons, we're asking for reversal of the order granting summary judgment and asking this Court to find that there is a question of fact as to the accrual of the statute of limitations against Dr. Kennan. Those are questions of facts that should be left to a jury. What I think is happening here is the defense counsel and the court is using hindsight to infer some meaning to the limited information that the plaintiffs had. It's a question for the jury to determine whether a reasonable person in the plaintiff's position knew or should have known that Dr. Kennan was substantively involved in the care that was at issue. I think especially whenever you consider that the issue is to be looked most favorably towards the plaintiffs, the non-moving party, it's one thing that the court did not do in this case. They construed the facts most favorably to Defendant Kenney and against the plaintiffs in finding that there was no genuine issue of material fact as to what commenced the running of the statute of limitations as against Dr. Kennan. Mr. Brown, let me ask you, is it correct that the judge's order found that the plaintiff became aware of Dr. Kenney's involvement in August and September of 2019? Yes, I believe, Your Honor, there was reference in the court's order that that is when, and that certainly was the plaintiff's position. And why did it take until May of 2020 to add Dr. Kenney? So in August or September of 2019, after suit was filed against Dr. Nichol, who was the emergency room physician who was involved face-to-face with the plaintiff in the St. Joe's emergency room, discovery questions were asked, and in some of those responses, there was indication that there were substantive communications between Dr. Kenney and Dr. Nichol. Those are not contained in the medical record. There's no evidence that there were substantive communications between the two. For the first time in August or September, based upon Dr. Nichol's discovery responses in the case against Dr. Nichol, Dr. Kenney was substantially involved in the care. It took 10 months. After that, they deposed Dr. Nichol to find out what those substantive communications were, and they deposed Dr. Kenney to find out what his recollection was. I actually believe that Dr. Kenney was deposed first, and he said, I don't recall having substantive conversations. And then they deposed Dr. Nichol. So it's without question, within two years of learning that Dr. Kenney was substantively involved in the care, the claim was brought against Dr. Kenney. I'm going to interrupt you, though. I was under the impression, though, that the plaintiffs had their own medical records in July of 2017 that indicated, and I looked at the exhibit, maybe it was at CIA too, that showed that Dr. Kenney was, in fact, a consultant. Is that correct? So the only reference in the plaintiff's medical records is an indication that says, consultant Dr. Kenney notified. And then there's a reference to, in the discharge instruction, the plaintiff or the patient is to follow up with Dr. Kenney the next day. That was one of the questions at the trial court level, what does that mean? Certainly in the depositions of the Roberts, they said, we had no knowledge that Dr. Kenney was involved substantively in the care. It was our understanding that we were to follow up with Dr. Kenney. How was Dr. Kenney deposed first? To be honest with you, I don't want to speculate. But Dr. Kenney was deposed after Dr. Nichol had identified him in his discovery responses as having substantive communications. I'm also a little confused about why the expert report of April 25, 2018, was the last state taken into account for the statute of limitations. If I have to speculate as to why the court used that date, I think the court may have been looking at the Moon case, which used the date of the expert report in Moon as the last point in time at which the statute theoretically could have begun to run. We charge that that's error because that reflects the claims against Dr. Nichol and theoretically, as we talked about in our brief, any claim that would appear on its face in the medical record. That would be the date where the statute of limitations would commence for any of those claims. What we're alleging here is the claim against Dr. Kenney does not appear in the medical record. There's no evidence that he was substantively involved in the care and treatment. I believe that's why the court used that date to say, if we were to construe this in the plaintiff's favor, the most favorable argument you could make was using that expert date. Which would, contrary to your remarks, give you the benefit of the doubt. Under the court's ruling, the court would be looking at the most advantageous date. If you take the position that a claim against Dr. Kenney appears on the face of the medical records, which it doesn't, and that's one of the issues, if you have an expert review the medical records to determine whether or not there's a claim against a provider, what information does the expert have to determine whether there's a claim against Dr. Kenney? He doesn't make any orders. He doesn't have any substantive entries in the records. There's nothing... He had no privileges. He had no privileges. Right. He had no privileges at the hospital. Now, what we subsequently learned through the course of discovery is, this is the practice within, and it is common within these rural hospitals. St. Elizabeth's Hospital makes a neurologist available to these rural hospitals to provide on-call consultation. An emergency room physician picks up the phone, calls the neurologist, says, this is what I've got, and their neurologist makes recommendations. Now, it's interesting, as part of the summary judgment motion, Dr. Kenney argues there wasn't even a physician-patient relationship between Heather Roberts and Dr. Kenney. He also wants to say, but the statute began to run at the same time as the statute began to run against Dr. Nichol. You can't have it both ways, and I think the trial court certainly appreciated he may not have privileges, but you are involved in the patient care. The patient just had no knowledge or reason to understand what that involvement was. But when your expert reviews the medical records, don't you expect your expert to pick out those kinds of alarm bells, if you will, so that you can file respondents in discovery or some kind of interrogatory at the hospital? I think it depends on the expert. I think it depends on the expert's knowledge of the type of facility that you're talking about. Certainly you have... The problem is it says right on the record that he was notified, and that's a doctor's name. There wasn't ambiguity about that, and then they were told to follow up with Dr. Kenney, who they don't know. So somebody, it seems to me, should be asking the question, who is this guy? And yet I don't see that as being done. So if you look... So the record says that Dr. Kenney was notified. It doesn't say anything beyond he was contacted and he was notified. There's reference in the discharge instruction that the patient is to follow up with Dr. Kenney. Construing it most favorably to the plaintiff, the non-moving party, you could argue, as we did in the trial court, that a patient can look at that and say, Dr. Kenney was notified. Dr. Kenney's involvement in the case was limited to follow up with the discharge instruction, follow up the next day. It's a question for the jury to determine whether a reasonable person in the patient's position would read that and say, well, Dr. Kenney may have had substantive involvement here, or is it a reasonable person who would say, if Dr. Kenney were involved in the care and treatment, there would be evidence of that. He would have entered orders. There would have been a substantive notation, either by Dr. Kenney or Dr. Nichol, of the information that was conveyed to Dr. Kenney and the recommendations that he made. None of that appears in these medical records at all. Was there a physician-patient duty at all? We argue that there was. The trial court agreed that there was. But again, unbeknownst at the time, unbeknownst to the patient, these are telephone calls that are made outside the patient's knowledge, outside of the patient's presence. I understand, and this is what we argue in the trial court, I understand the justice's position, but it's a question of fact. It's a question of fact as to whether or not a reasonable person would read the records and feel that way. That's left to a jury. You certainly can't say, as a matter of law, that a no reasonable person could read these records and not appreciate a claim against Dr. Kenney. Well, that's why I asked you about the latest date of the statute of limitations with the judge's order, because it still took 10 months after the judge decides that you have knowledge for anything to get done with Dr. Kenney. It seems there was a delay there by the plaintiff. The expert report was in the... April 25 of 2018? And then the case was filed against Dr. Nichol, and then initial written discovery was undertaken, and in August or September of 2019, so I think that there were separate discovery production, one in August, one in September. That's when Dr. Kenney's substantive involvement came to light. But then it took until May of 2020 to add him in. And that involved two things. One, that involved taking the deposition to find out what the actual correspondence of communication between the doctors were. That was a conversation with deposition, Dr. Nichol, as well as a deposition with Dr. Kenney. And I believe the motion for leave was sought earlier than that, but it was delayed due to COVID. I think that that's in the record. I see my time has expired. I appreciate it, Justice. Thank you for now, Mr. Brown. You'll have some additional time. Mr. Brown, would you? Go ahead with the questions. Thank you. Okay. Mr. Eckenrode, how are you doing? All right. How are you, Your Honor? It's been a minute. Good. Hang in there. Thank you. It's been a while. It has. Thank you, Your Honors. And may it please the Court, I'm Tad Eckenrode, representing the defendant, appellee in this case. I plan to be very brief, although you've probably heard lawyers say that before. What's unique about this case, in all of the cases cited by both the appellant and the appellees in their briefs that talk about medical malpractice cases and discovery of the cause of action, they always rely upon when does the individual have reasonable knowledge that there may have been misconduct. In this case, that was the very first day. When Mr. Roberts left the hospital with his wife on July 21, he asked for a copy of the record on the way out. He was already suspicious that somebody had misdiagnosed a stroke, that somebody had not provided appropriate care, so he asked for the record on the way out. It's my belief that, quite frankly, the clock starts that day. I believe the lower court, to your point, Justice Gates, kind of gave the plaintiff the benefit of the doubt. But quite frankly, the clock starts that day, as it does in all malpractice cases. So the day of the event, the day of the alleged negligence, is when the clock starts. In that time, during the statutory period, plaintiffs or their counsel will go out and they will seek appropriate expert reviews, which are conducted sometime during that two-year period. And at the end of the two years or sooner, they'll file suit. The clock doesn't start when the plaintiff first gets that supportive expert review. If that was the case, then the statute of limitations would really have no place here at all. The cases could go on ad infinitum until an expert supports the case. In this case, what Judge Strauch had said below was that the plaintiff had this case reviewed by an expert in April of 2018. By that point in time, any expert looking at the case could have identified that there was at least a possibility of a case against Dr. Keeney, whose name is clearly in the record. And what we know from the record is that Mr. Roberts became aware, either that day that his wife was in St. Joe, or the next couple of days when she was at the other hospital, that there had been a neurologist involved at St. Joe, because he found that out in looking at the record, and he knew that Dr. Keeney was that neurologist. So at that point in time, he could have certainly, being suspicious that there was misconduct at that hospital, could have inquired and sought somebody to give an opinion about that. What we know is they eventually did get that. They got their opinion supporting Dr. Keeney on March 27, 2020. That's within two years of the beginning of the clock for Judge Threlpred's clock, which started in April of 2018. So they still could have timely filed this within two years of Judge Threlpred starting the clock in April of 2018, but they did not. Is it true that they filed a motion to add Dr. Keeney within the two years? I don't believe that's true, but I don't have that memorized, Your Honor, quite frankly. I can't answer that question. Well, I mean, if COVID interrupted it. There was COVID. We're all aware of that. And quite frankly, if COVID interrupted it, I don't want to be misquoted in saying that they didn't do that. If they did, I just don't recall that. Unfortunately, I was not even involved in the case at that point in time. Okay, let me ask you a question. The fact that Dr. Keeney denies that he owes the plaintiff a duty because he did not render care to the plaintiff, does that defeat your argument regarding the statute of limitations? No. You're getting to run? It's simply an alternative argument, Your Honor. We proposed two arguments to the court when we proposed our motion for summary judgment. One was the statute of limitations, and the alternative argument was, did Dr. Keeney even have a duty? Judge Threlpred, as you know, did not even get to that. If he had no duty, there would be no statute of limitations to discuss. Absolutely. But, you know, we focused on the statute of limitations. Then the fact of whether he had a duty or not becomes a question of fact. That would be a question of fact if that's what we were there to decide. The question of law and the reason why this was an appropriate decision by the lower court is because there is only one outcome that can be decided by the situation here. There's no question that the plaintiffs knew they had a potential claim against health care providers as of July 2017, and there's no question that they did not file their suit within two years. So there is only one possible outcome, which is why this is not a question of fact in the statute of limitations issue. And that's what most of the case law says, is that if there's only one possible outcome, it's not a question of fact. So as to the statute of limitations issue, it's not. If we were going to litigate the issue of whether there was a duty, that probably would be a question of fact. But we're not doing that. That hasn't been decided by the court below, and quite frankly, hopefully not going to be decided at all. So the one thing I would point out about the Mackey case that counsel cites that I think we're missing, Mackey is a good example of a case in which the plaintiffs can't know what an individual defendant or individual doctor's role is until discovery, because in that case, Mackey, like Dr. Keeney, was a consult, but the records reflected that he had done certain things, certain things that would have been appropriate within the standard of care. When they found out later that he didn't do those things, that's when for the first time they knew they had a claim against him. That's what's different about Mackey than the Keeney case. So in our case, all they know is Dr. Keeney was involved. At that point in time, as all the cases say, they have a duty themselves to start trying to identify whether they have a cause of action. They have the responsibility to start asking questions. And quite frankly, they knew at that point in time that not only Dr. Nickel was involved, they knew Dr. Keeney was, there were radiologists involved, there were other primary care physicians involved. When they got those records, their duty is to try to determine who they have a cause of action against, if anybody. They obviously found that they had a cause of action against Dr. Nickel, and that's fine. They proceeded with that. They could have had the case reviewed by a radiologist to see if there was improper review of those radiology studies. I don't know if they did or didn't, but they didn't find them. They could have had a neurologist look at Dr. Keeney's role, and they didn't. So they had that opportunity as early as July, and they didn't pursue that. But the records don't show anything that Dr. Kenney did. So when you say they could have had them reviewed, what would there have been to review? What I think a neurologist would have said, and what I think their neurologist eventually said, was if Dr. Keeney got any information at all, he as a neurologist should have made certain recommendations. And I think a neurology expert telling the plaintiff's attorney that would have said, you need to find out if Dr. Keeney got information. But they can't start the clock after they get that information. That's information they could have identified earlier. When you give the records to an expert to review, there has to be something for the expert to review. And here, even the test that he recommended was ordered by the family physician. Sure. It couldn't be ordered by Dr. Keeney. Sure. So how is there any relationship between Kenney and the plaintiff if the doctor can't even order a test? Well, I think that's what their argument is, is there was a relationship, and that relationship is that he provided some feedback to Dr. Nickell. He apparently gave Dr. Nickell a recommendation to start the patient on aspirin before she went home. He apparently told Dr. Nickell to have the patient see him. But that's not in the record, and it can't be reviewed by an expert. That's true. But what an expert can say is, looking at that, what an expert can say is, as their expert did, the ER expert thought Dr. Nickell dropped the ball on certain things. A neurologist could look at it and say, well, it looks like a neurologist was contacted about this. Clearly, I don't know what that neurologist was told. But what most experts will say is, if the neurologist was told X, then he did something wrong. If he was told Y, he did something right. You need to find that out. But they can certainly give him the benefit of the doubt at that point in time to say, there may be a case against Dr. Keeney because of the fact that his name is in there, and he clearly shows he was notified. What was he notified about? If you take your argument at face value, and you take a medical record, then what you're saying is, every doctor's name has to be investigated that's in that record. And that's just not the law. If you want to make a case against the radiologist in this case, you're going to need a radiology expert. So if you, in getting the records, if you're... But there has to be a reasonable suspicion. Reasonable belief that something was done wrong. So if, in this case, there was a thought that the X-ray was misread, you would certainly have a radiology expert look at that. So with regard to any aspect of any health care, if you think somebody may have dropped the ball, you think there was improper level of drugs given... That's my point, is how would you know that if it just says, Keeney contacted and he could not even order the test? You may not know that from the record. And that's actually what happened in Mackey. In Mackey, they didn't know that the doctor didn't order the things that he ordered. And the court held that a special relationship forms. But that's a discovery issue. Now, quite frankly, that discovery issue there could not have happened until they found out. In this particular case, they could have found out Dr. Keeney's role, because they knew who he was, early on. That easily could have been done. So that's what's different about Mackey. The discovery rule is often used to say, if you find something out that you could not have known beforehand, that moves the statute back. Here, that information was available, could have been available, had they pursued it. And again, as you said, as of April 2018, they had an expert who thought there was a case of malpractice. At that point in time, if they think there's somebody else that may be involved, they can be having those other health care providers review their conduct, reviewed by somebody if they think there's a case. And they didn't. So quite frankly, the two years expired. The statute of limitations, as we all know, is harsh, but it is what it is. And we've got to draw bright lines. And unfortunately, in this particular case, that had the impact of Dr. Keeney appropriately being dismissed out of this case, because I don't think there was at all a timely submission against him. Other questions? Your argument a little longer than you thought. You asked me the questions, you know. Your questions. Your questions. Thank you, Your Honor. Good seeing you. Mr. Brown? Thank you, Justice. Let me pick up on just a note. The statute of limitations is harsh. If you look at what the Illinois Supreme Court and what Illinois law has done, it has liberalized the statute of limitations, making it easier and more accommodating to hear cases on the merits. It imposes the discovery rule. It imposes a question of fact as to what a reasonable person would do. I would argue that the statute of limitations jurisprudence is, we are broadening, we are expanding how a statute of limitations operates to allow cases to be brought, and that's the exact opposite of what happened in this circumstance. Because this really begs the question of a broader issue, and that's in a multi-defendant claim, what triggers the statute of, the commencement of the statute of limitations? Is it one clock for all, or is it a specific cause? In this case, there's no question the statute began to run for Dr. Nipple because that claim was evident to the plaintiffs based upon the inquiry that they knew to do. The question is, as it pertains to a claim that isn't visible to a reasonable person, which is the claim against Dr. Kinney, when does that statute commence? In Mackey, the court says, the third district says, that's specific, the statute, the running of the statute of limitations is specific to the defendant doctor. And in Mackey, they said, well, it's a question of fact based upon what information was available to the patient as to when that statute commenced. It wasn't a one clock for all, because there would be circumstances where, on the eve of the two year statute of limitations for one defendant, you'd file suit, and then you'd learn some information that was unavailable to you. Within the time frame of the claim against the one defendant, that you have a claim against another defendant. And I'm not just making this up. This is how the statute of limitations operates under Kubrick. And the Illinois Supreme Court, time and time again, has said, we follow the Supreme Court's guidance in Kubrick. Our statute of limitations rule is similar to the statute of limitations for federal tort claims under Kubrick. It's a cause specific statute of limitations. I see my time is running short. I do want to note, because Justice States, you asked the question, I don't want to misrepresent it to the court, but I do believe that the motion to add Dr. Kenny was filed, I believe maybe in March of 2020, and it was not entered until April of 2020. So it does fall within the COVID time frame. Again, this is an issue of, it's a question of fact. For a reasonable person, for a jury to determine what a reasonable person would understand and what a reasonable person would do in light of the information that was available to these patients. You know, counsel got up here and talked about, well, you review everything that's based on the medical records. Well, that's what happened here. And Dr. Kenny, the doctor, is in the best position to avoid this issue, because if he is involved in patient care, he documents his involvement in that patient care, and it's included in medical records. That didn't happen here. And so after the fact, the court looks at this and says, we're going to hold this against the patient, even though on the face of this document, there is no evidence that there was substantive communication between Dr. Nickel and Dr. Kenny. The patient reviewed, had the records reviewed, as any reasonable patient with concerns would do, received a report from an expert based upon those medical records, and it's a question for a jury to determine whether a reasonable person would suspect that Dr. Kenny had actual substantive involvement in the care, but despite that not appearing in the records. Question? Okay, Mr. Brennan, thank you. Thank you. And Mr. Eckenrode, thank you as well for your arguments here today. The matter will be taken under advisement. We'll get an order out in due course. Thank you.